UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JULIUS SPINNER,<br><br>                    Plaintiff,<br><br>    v.<br><br>DIRECTOR BECKY SCOTT, *et al.*,<br><br>                    Defendants. | Civil Action No.: 24-945 (JXN)(LDW)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is *pro se* Plaintiff Julius Spinner's ("Plaintiff") civil rights Complaint ("Complaint), filed pursuant to 42 U.S.C. § 1983 (ECF No. 1) and his application to proceed *in forma pauperis* (ECF No. 1-1). The Court grants him leave to proceed *in forma pauperis* and orders the Clerk of the Court to file the Complaint. The Court must now review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous malicious for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons stated herein, Plaintiff's claims are dismissed for failure to state a claim on which relief may be granted.

I.      BACKGROUND[1]

On or about February 20, 2024, Plaintiff, a pre-trial detainee confined in Hudson County Correctional Center ("HCCC") in Kearney, New Jersey, filed his Complaint in this matter seeking to raise claims against HCCC's Acting Director Becky Scott ("Scott"), Director of Nurses Maxim

---

[1] The Court construes the factual allegations of the Complaint as true for the purposes of this screening only.

Casas ("Casas"), Nurse Wilson ("Wilson"), Nurse Practitioner Invala Callisto ("Callisto"), Officer Guerroero ("Guerroero"), and Sergeant Woodley ("Woodley"). (ECF No. 1.) Plaintiff's claims arise from the care he received for a wound while at HCCC. The Court construes the Complaint as raising failure to provide adequate medical care claims.

According to the Complaint, on January 31, 2024, around 2:30 p.m., Plaintiff was in and out of consciousness due to the excruciating pain he was experiencing from what he believed was a spider bite. (*Id.* at 7.) Plaintiff submits that the housing officer on duty informed the relief officer, Defendant Guerroero, of the situation. (*Id.*) Defendant Guerroero called the medical unit and was told not to send Plaintiff to medical. (*Id.* at 7-8.) Upon Plaintiff's request, Defendant Guerroero called the medical unit again and received no answer. (*Id.* at 8.) Plaintiff submits that he pleaded with Defendant Guerroero to send him to medical for approximately thirty minutes and then he walked to the front of the housing unit where he "dropp[ed] to one knee." (*Id.*) At that time, Associate Director Erica Whitaker called the Sergeant on duty. (*Id.*) When the Sergeant arrived, the other inmates were urging the Sergeant to call a "code white." (*Id.*)

Plaintiff submits that he was in and out of consciousness for thirty to forty minutes until the medical staff arrived. (*Id.* at 9.) Plaintiff was taken by wheelchair to the medical unit, where a numbing cream was applied to his back. (*Id.*) Plaintiff "was given a needle," and Defendant Callista lacerated the infected area. (*Id.* at 9, 15.) Plaintiff asked the medical staff if he should be sent to the hospital, but the staff failed to respond to him while continuing to perform a "mini surgery." (*Id.*) Plaintiff claims he informed the staff that it might be a spider bite and asked if it was a staph infection however, he received no response. (*Id.*)

On February 8, 2024, Plaintiff was seen by Nurse Carlow for wound care and bandage change. (*Id.*) Plaintiff submits that there are no medical records of this matter, and the medical

2

staff has failed to inform Plaintiff of his prognosis. (*Id.*) Plaintiff submits that he has an open wound on his back, which may or may not be life-threatening, and he has not been seen by a doctor. (*Id.* at 10.) On February 9, 2024, Officer Ciriaco informed Plaintiff that there were no records of his medical visits. (*Id.*) On that same day, Nurse Fidelia inspected and took a culture of Plaintiff's wound. (*Id.* at 12.) Plaintiff has not received the culture results. (*Id.*) On February 12, 2024, Defendant Wilson cared for Plaintiff's wound in the housing unit instead of the medical unit, allowing the other inmates to view Plaintiff's wound. (*Id.* at 19.)

Plaintiff believes the wound may have been caused by either an insect bite, a staph infection from a COVID-19 outbreak that took place in December 2024, or a staph infection from food poisoning caused by "stale food," or "freezer[-]burned processed meat." (*Id.* at 10-11.) Plaintiff claims that there is "a gaping hole in [Plaintiff's] back that [] will leave him disfigured" and has caused a "heightened risk of seizure, incapacitation, or death." (*Id.* at 11.)

Plaintiff seeks monetary compensation and staff training.

## II. STANDARD OF REVIEW

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), or seeks redress against a governmental employee or entity. *See* 28 U.S.C. § 1915A(a). District courts may *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which the court may grant relief, or seeks monetary relief from a defendant who is immune from such relief. *See* §§ 1915(e)(2)(B), 1915A(b).

The legal standard for dismissing a complaint for failure to state a claim pursuant to Sections 1915(e)(2)(B) or 1915A is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008). A court properly grants a motion

to dismiss pursuant to Rule 12(b)(6) if, "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quotations and citations omitted).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, while *pro se* pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**III.    DISCUSSION**

In the Complaint, Plaintiff alleges Defendants are liable to him under 42 U.S.C. § 1983 because they failed to provide adequate medical care. (*See generally* ECF No. 1.) A plaintiff may have a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, to obtain relief under § 1983, a plaintiff must establish (1) that one of his rights secured by the Constitution or laws of the United States was violated and (2) that this violation was caused or

committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

Here, the Court construes Plaintiff's Complaint to allege claims for relief against Defendants Scott, Casas, Wilson, Callisto, Guerroero, and Woodley.

### A. Failure to State a Claim

#### 1. *Supervisory Liability Claim*

The Court construes the Complaint as asserting supervisory liability claims against Defendants Scott and Cassas. However, Plaintiff's Complaint fails to allege any specific facts against Defendants Scott and Casas. (*See generally* ECF No. 1.)

A plaintiff may establish supervisory liability under § 1983 by showing (1) liability based on an establishment of policies, practices, or customs that directly caused the constitutional violation or (2) personal liability based on the supervisor participating in the violation of the plaintiff's rights, directing others to violate the plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct. *Doe v. New Jersey Dep't of Corr.*, No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1987). "Only those defendants whose inactions or actions personally caused [Plaintiff's] injury may be held liable under § 1983." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990). In other words, "[a] defendant in a civil rights action must have personal

5

involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode*, 845 F.2d at 1207.

"[T]o hold a supervisor liable . . . [for their deficient policy or practice] . . . the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

In the Complaint, Plaintiff does not plead facts that identify a specific policy or policies that Defendants Scott and Casas failed to employ. Instead, Plaintiff makes a conclusory allegation that as Director of HCCC, Defendant Scott had "superior knowledge to convey . . . information, precautions, safety, policy, etc." and failed to implement a policy in the jail in terms of the medical department staff. (ECF No. 1 at 13.) However, that vague claim is contradicted by Plaintiff's allegation that the medical staff failed to comply with the policies and administrative codes regarding the protocol for emergency treatment and care. (*See id.* at 11, 13-14.) Plaintiff argues that Nursing Director, Defendant Casas, failed to train subordinate nurses or have officers trained on the "proper procedure, protocol in terms of an incapacitated [] person sprawled out on the floor." (*Id.* at 17-18.) Plaintiff argues that Defendant Casas "knew or should have known [of the] failure to train and enforce response protocols by ignoring several complaints." (*Id.* at 18.) Plaintiff fails to allege how the policies in place regarding the medical care provided to inmates were deficient. Plaintiff asserts only conclusory allegations that Defendants Scott and Casas failed to implement policies or train officers and medical staff. Plaintiff has failed to plead with any specificity that a policy or custom put into place by Defendants Scott and Casas was the moving force behind the

alleged violation of his right to medical care. Additionally, Plaintiff also fails to allege that Defendants Scott and Casas participated in any decisions regarding his medical care, told others to deny Plaintiff medical care, or even knew of the status of Plaintiff's medical care. Thus, Plaintiff has failed to state a viable cause of action under Section 1983 for supervisory liability. Accordingly, Plaintiff's claims against Defendants Scott and Casas are dismissed without prejudice.

### 2. Deliberate Indifference to Serious Medical Needs

Plaintiff raises Fourteenth Amendment failure to provide adequate medical care claims against Defendants Wilson, Callisto, Guerroero, and Woodley. (*See generally* ECF No. 1.)

A pretrial detainee's claim of inadequate medical care arises under the Fourteenth Amendment rather than the Eighth Amendment. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Nevertheless, the United States Supreme Court has held that the Fourteenth Amendment affords pretrial detainees protections that are "at least as great" as those afforded to convicted prisoners under the Eighth Amendment. *See id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Thus, in the context of claims for inadequate medical care, the Third Circuit has "found no reason to apply a different standard than that set forth in *Estelle* [*v. Gamble*, 429 U.S. 97 (1976)] (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment." *See id.*

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle*, 429 U.S. at 103–04. In order to set forth a cognizable claim

for a violation of his right to adequate medical care, an inmate must allege (1) a serious medical need and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious that a layperson would recognize the necessity for a doctor's attention and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical needs. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). A plaintiff alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the

assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most, what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

Assuming arguendo that Plaintiff's wound is a "serious" medical condition, he has failed to adequately allege that Defendants Wilson, Callisto, Guerroero, and Woodley were deliberately indifferent to that serious medical need. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). Here, Plaintiff's allegations make it clear that he received medical treatment for his wound. Plaintiff alleges that he first requested medical care on January 31, 2024, at approximately 2:30 p.m.. At that time, Defendant Guerroero called the medical unit and was instructed not to send Plaintiff to medical. (ECF No. 1 at 7-8.) Upon Plaintiff's request, Defendant Guerroero attempted to follow up with the medical unit. (*Id.* at 8.) Approximately thirty minutes later, Defendant Woodley was called to Plaintiff's housing unit. Although Plaintiff alleges that he failed to call a "code white," the medical staff was called and arrived to care for Plaintiff. (*Id.* at 8-9, 15.) Defendant Callista then numbed Plaintiff's back and lacerated the infected area. (*Id.* at 9, 15.) On February 8, 2024, Plaintiff received wound care and a bandage change. (*Id.* at 9.) A culture of Plaintiff's wound was taken the following day. (*Id.* at 12.) On February 12, 2024, Defendant Wilson cared for Plaintiff's wound. (*Id.* at 19.)

The facts alleged show that within a short period of time of making prison officials aware of his condition, Plaintiff received timely medical care and follow-up care for the twelve days that followed. Although Plaintiff alleges that Defendant Wilson should have cared for his wound in the medical unit and not his housing unit, Defendants Guerroero and Woodly should have called a "code white" instead of having the medical staff come and care for Plaintiff, and that Defendant Callista should have sent him to the hospital instead of caring for his wound in the medical unit, these allegations present a disagreement with his treatment, but "mere disagreement" is an insufficient basis on which to establish a claim for deliberate indifference. *See Pearson v. Prison Health Services*, 850 F.3d 526, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."); *Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008) ("[t]he *Estelle* test gives substantial latitude to prison medical authorities to diagnose and treat inmates"). In short, the alleged facts, even assuming they are true, do not support a finding of deliberate indifference to serious medical needs, and Plaintiff does not present specific allegations that would indicate he received constitutionally deficient medical care. As such, Plaintiff's claims against Defendants Wilson, Callisto, Guerroero, and Woodley are dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's application to proceed *in forma pauperis* (ECF No. 1-1) is granted. Plaintiff's Complaint (ECF No. 1) is dismissed without prejudice. Plaintiff shall have thirty (30) days to file an amended complaint to cure the deficiencies discussed above. An appropriate Order follows.

**Dated**: April 2, 2024

JULIEN XAVIER NEALS
United States District Judge